Alexis Brode
229 Pleasant Street, Unit 2
Portsmouth, NH 03801
858-205-4203
akbrode@gmail.com

1:22-cv-02903
Judge Manish S. Shah
Magistrate Judge M. David Weisman
RANDOM

**FILED**

JUN 0 2 2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DIVISION DISTRICT OF ILLINOIS**
219 South Dearborn Street, Chicago, IL 60604

ALEXIS BRODE
    PLAINTIFF

v.                                                                                      CASE NO. _____

XERIS PHARMACEUTICALS, INC.
    DEFENDANT
_____/

## AMENDED COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, Alexis Brode ("plaintiff"), files this Amended Complaint against Defendant, XERIS PHARMACEUTICALS, INC. ("defendant") and states as follows:

### INTRODUCTION

1. This is a claim by plaintiff Alexis Brode against her former employer for the violation of the Americans with Disabilities Act and Amendments Act ("ADA and ADA-AA"), 42 U.S.C. § 12101, et seq., for discrimination and retaliation on the basis of disability, and for prohibited actions taken on the basis of this disability under the "regarded as" prong; and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur.*

2. Accordingly, plaintiff brings this action pursuant to the ADA and ADA-AA to recover all available relief in law, including but not limited to: (i) a judgment from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory damages in whatever amount she is found to be entitled; (iv) reinstatement, or in the alternative front pay in the

event reinstatement is not practical; (v) an equal amount as liquidated damages, other monetary damages; (vi) an award of costs and reasonable court fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-judgment interest; and (ix) a jury trial on all issues so triable.

## JURISDICTION AND VENUE

3. This court has original and exclusive jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §1331, in that the matters in controversy are brought pursuant to Title I of the Americans with Disabilities Act of 1990 and the ADA and ADA-AA of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

4. Venue is proper in this judicial district under 28 U.S.C. §1391 because defendant does business in this judicial district and the acts complained of took place in this judicial district.

5. Plaintiff timely filed a charge of Discrimination against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of March 29, 2022.

6. On or about April 7, 2022, the EEOC issued plaintiff a Dismissal and Notice of Right to Sue against defendant with regards to this matter. A copy of the Right to Sue letter is attached as Exhibit A – 15.

7. Plaintiff has exhausted the administrative remedies available to her.

8. Plaintiff files her complaint within 90 days of the EEOC's issuance of the notice of right to sue.

## PARTIES

9. Plaintiff, Alexis Brode, resides in Portsmouth, New Hampshire at the address of 229 Pleasant Street, Unit 2 and is a qualified individual with a disability within the meaning of the ADA and ADA-AA.

*Complaint-- Alexis Brode*

10. Plaintiff was an employee of the defendant, which is a "covered entity" within the meaning of the ADA and ADA-AA.

11. Defendant's principal place of business is located at 180 LaSalle Street, Chicago Illinois, 60601

12. At all times material to this action, Plaintiff was an "employee" of defendant within the meaning of the ADA and ADA-AA.

13. At all times relevant, defendant was an "employer" as defined by 42 U.S.C. 12111(5).

14. From approximately October of 2021, until her termination on November 29, 2021, plaintiff was employed as a Senior Area Business Specialist.

15. At all times material to this action, plaintiff was perceived as having a disability as defined by 42 U.S.C. §12102 (1) (2) and (3) and was subjected to adverse actions prohibited under this chapter because of perceived physical impairments whether or not these perceived impairments limited or were perceived to limit major life activities.

16. Specifically, plaintiff was perceived as disabled with a contagious disease; was mis-classified as having an impaired immune system and an impaired respiratory system by defendant; and was not allowed to work because of defendant's discriminatory perceptions, policies and procedures.

17. At all times material to this action, plaintiff was, and is, a "qualified individual" under the ADA and ADA-AA as a person who met the legitimate skill, experience, education, or other requirements of the employment position that plaintiff held, and who can/could perform the "essential functions" of the position plaintiff held with or without reasonable accommodation.

18. Additionally, defendant is not eligible for any exemption under the ADA and ADA-AA, and, indeed, did not seek or obtain an exemption.

19. At all times material to this action, defendant is/was an employer covered by the ADA and ADA-AA in that it employs more than 15 employees.

20. At all times material to this action, plaintiff was an employee entitled to be free from discrimination on the basis of a perceived disability under the ADA and ADA-AA.

## PLAIN STATEMENT

21. Defendant's policies and procedures demonstrate that it discriminated against plaintiff based upon perceived disability. When plaintiff objected, the defendant continued to impose accommodations; including but not limited to: medical examinations, medical interventions including mask-wearing; without first conducting an individualized assessment to determine if she was a direct threat. Defendant used policies and procedures to harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and inquiries upon plaintiff. Defendant also retaliated against plaintiff by interfering with her rights, imposing punitive measures including isolation and medical examinations, withholding her pay, and ultimately terminating her employment, which is prohibited under the ADA and ADA-AA.

## STATEMENTS OF FACT

22. The Americans with Disabilities Act Amendments Act ("ADA and ADA-AA"), 42 U.S.C. § 12101, et. seq., as amended is a remedial statute aimed at addressing and providing remedy in response to Congress's findings that discrimination against individuals with physical or mental disabilities persist in critical areas like employment, and our nation's goals with respect to individuals with disabilities is to assure equality of opportunity and participation. 42 U.S.C. § 12101(a)(1)-(8). The ADA and ADA-AA is meant to protect qualified employees, like plaintiff, from discrimination, harassment and retaliation in the workplace on account of a real or perceived mental or physical disability. 42 U.S.C. § 12112.

23. Plaintiff advised defendant that she was being regarded as disabled by the defendant and that the defendant was making a record of this disability by mis-classifying her as substantially limited with impaired immune and respiratory systems affecting her ability to perform major life activities in the workplace including working, communicating with others, performing manual tasks, talking, and breathing without the use of mitigation measures.

*Complaint-- Alexis Brode*

24. Plaintiff on many occasions duly noticed defendant of her good faith opposition to discriminatory policies and procedures.

25. Under the ADA and ADA-AA an employer may not require an individual with disability to accept accommodations which such qualified individual chooses not to accept. 29 CFR 1630.9 (d). This is especially pertinent when accommodations are imposed for a perceived and unproven disability.

26. Under the ADA and ADA-AA an employer is required to conduct an individual assessment to determine whether an employee poses a 'direct threat' before it can impose any measures upon the employee. 29 CFR §1630.2 (r)

27. Under the ADA and ADA-AA it is considered discrimination on the basis of disability if the employer limits, segregates, or classifies an employee in a way that adversely affects such employee because of the disability. 42 USC § 12112

28. Under the ADA and ADA-AA an employer who discharges, disciplines, or discriminates against an employee in the manner described in subsection (a) is considered to have violated 29 CFR §1630.4 (a)

29. Under the ADA and ADA-AA employers are prohibited from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing. 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c) and shall be subject to the enforcement provisions relevant to such violations set forth in sections 42 U.S. Code § 12117, 42 U.S. Code § 12133 and 42 U.S. Code § 12188.

30. Under the ADA and ADA-AA employers are prohibited from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b).

31. Under the ADA and ADA-AA, employers are prohibited from sharing non-job-related medical classification without any regard to confidentiality; 29 CFR §1630.14 (c).

32. Plaintiff may proceed under the "regarded as" prong and the "record of" prong and this court has jurisdiction under the "regarded as" prong of the ADA and ADA-AA.

## GENERAL ALLEGATIONS

33. At all times material to this action, defendant failed to comply with its duty under the ADA and ADA-AA.

34. Plaintiff notified defendant that she was a qualified individual with disability because she was being regarded as disabled with a contagious disease by the defendant's policies and procedures.

35. Defendant's policies and procedures are specifically implemented for the purpose of mitigating the disability which it regards plaintiff as having.

36. Defendant misclassified plaintiff as substantially limited and refused to allow plaintiff to perform several major life activities without using mitigation measures.

37. When plaintiff chose not to accept the defendant's offered accommodations per 29 CFR 1630.9 (d), the defendant retaliated against plaintiff.

38. Defendant was required to either provide equal access or claim exemption to the ADA and ADA-AA and it did neither; thus defendant failed to perform its duty under the ADA and ADA-AA.

39. Defendant discriminated and retaliated against plaintiff for making a complaint that she was being regarded as disabled, thus asserting her entitlement to equal access under the ADA and ADA-AA.

40. Plaintiff requested the defendant to provide a copy of the individualized assessment[1] that it conducted to determine that plaintiff was a direct threat; however, defendant ignored the requirement and continued to demand that plaintiff participate in its "health control

---

[1] EEOC Technical Manual 2.2 (c) "...the Supreme Court has stated and the Congress has reiterated, "society's myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairments." The legislative history of the ADA indicates that Congress intended this part of the definition to protect people from a range of discriminatory actions based on "myths, fears and stereotypes" about disability, which occur even when a person does not have a substantially limiting impairment."

measures" or accommodations such as mask-wearing, medical examinations, inquiries and treatments under Emergency Use Authorization ("EUA").

41. Rather than providing equal access or proving any exemption to complying with the ADA and ADA-AA, defendant embarked on a series of adverse employment actions against plaintiff which were designed to deter plaintiff's good faith opposition to the policies and procedures.

42. Defendant's policies and procedures segregated the plaintiff based on physical condition.

43. Defendant's policies and procedures limited plaintiff's access to the workplace based on perceived disability.

44. Defendant's policies and procedures refused allow plaintiff to perform her employment duties without using mitigation measures.

45. Defendant's policy and procedures limited plaintiff's right to invoke ADA and ADA-AA protections by refusing to recognize that plaintiff could claim a reason under Federal law for refusing to comply with the policy and procedures. Instead, defendant insisted that plaintiff could only claim a "medical" or "religious" exemption, which is interference with plaintiff's rights under the ADA and ADA-AA.

46. Defendant also engaged in adverse employment actions when plaintiff claimed the right of informed consent and the right to refuse to take part in clinical trials and noticed defendant that all the imposed mitigation measures fall under an EUA period.

47. Defendant's violation of the ADA and ADA-AA was not in good faith and was willful, and plaintiff sustained damages as a result of defendant's conduct including past and future earnings, lost opportunities and benefits, liquidated damages, emotional distress, and reasonable attorneys' fees and or costs.

48. Plaintiff re-alleges each statement from the affidavit herein.

*Complaint-- Alexis Brode*

## COUNT I

## DISCRIMINATION UNDER THE ADA and ADA-AA FOR PERCEIVED DISABILITY

49. Plaintiff incorporates each of the above statements of fact herein; the allegations contained in the paragraphs 1 through 48 and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

50. Title I of the ADA prohibits employment discrimination on the basis of disability in all aspects of employment, in 29 CFR § 1630 *et sequitur;* and particularly §1630.4; § 1630.5.

51. Plaintiff is a qualified individual under the ADA and ADA-AA.

52. On October 7, 2021, defendant began regarding plaintiff as having the disability of a contagious disease and made a record of such disability by mis-classifying plaintiff as being substantially limited with an impaired immune system and an impaired respiratory system; and began requiring plaintiff to use mitigation measures to perform several major life activities in the workplace.

53. Defendant failed to conduct an individualized assessment to determine whether plaintiff met the criteria of posing a direct threat. Defendant only referred to statements made on the CDC's website which does not qualify as an individualized assessment.

54. Despite having knowledge of plaintiff claiming protected status under the ADA and ADA-AA, defendant continued to limit, segregate, classify plaintiff due to its perception of plaintiff as a person with a disability within the meaning of the ADA and ADA-AA.

55. Defendant's responses to the requests made by plaintiff to cease the discrimination and harassment were in fact non-responsive, dismissive or harassing; a true and correct copy of each written communication is included with Exhibit A.

56. Despite plaintiff's written notices, defendant continued without cessation to harass the plaintiff based upon disability by sending plaintiff numerous communications coercing plaintiff to accept various accommodations or suffer adverse employment actions. All written communications are attached as Exhibit A.

57. Plaintiff has been prevented from enjoying equal access and the benefits of employment enjoyed by other employees.

- 8 -

*Complaint*-- Alexis Brode

58. Defendant's "COVID-19 policies and procedures" classified plaintiff in such a way that plaintiff's employment opportunities were adversely affected and limited because defendant would not permit plaintiff to do her job without first submitting to defendant's accommodations ("mitigation measures").[2]

59. Defendant required non-job-related medical examinations or made disability-related inquiries[3] of plaintiff that were not consistent with business necessity. Defendant has also failed to provide any notice as to the manner in which these inquiries or medical examinations were an essential function of plaintiff's job.

60. An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job[4] with or without reasonable accommodations.

61. Defendant has never conspicuously disclosed or gave legally adequate notice that complying with the COVID-19 mitigation measures ("accommodations") are an **essential function** of the job of Senior Area Business Specialist; and these measures have never previously been an essential function of plaintiff's job.

62. Defendant failed to mention plaintiff's right of refusal under EUA guidelines[5].

63. Plaintiff claimed her right not to provide any medical information that is not related to the performance of her job duties.

64. Defendant limited the accommodation measures[6], such as examinations; disclosures of medical records that were not job-related; experimental injections; medical interventions; equipment or products; to only those chosen by defendant. Additionally, defendant failed to prove that there are no other accommodations available which do not require injections, medical devices and medical examinations.

---

2  Prohibited by 29 CFR § 1630.5

3  Prohibited by 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b)

4  29 CFR 1630.2(n)(2) definition "Essential Function": "(i) ....the reason the position exists is to perform that function."

5  Title 21, Chapter 9 V, Part E §360bbb–3a. Emergency use of medical products.

6  29 CFR Part 1630.2(j)(5)(i)

65. Defendant classified plaintiff as "unvaccinated"[7]; widely shared this classification of plaintiff with other employees without any regard to confidentiality[8]; and encourages employees to harass plaintiff with repetitive emails, intimidating interactions and threats of termination.

66. If plaintiff had previously made at least one request for reasonable modifications, plaintiff has since withdrawn such request.

67. Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

68. The ADA and ADA-AA also protects individuals such as plaintiff for whom submitting to certain accommodation measures would create impairments. The accommodations include, but are not limited to, taking experimental injections under Emergency Use Authorization (EUA) which are being promoted as "vaccines" but which are not legally vaccines; submitting to repetitive, non-job-related medical examinations (nasal tissue testing, temperature checks); being placed under isolation, segregation and quarantine without due process; using medical devices for mitigation measures[9] (masks); disclosing plaintiff's medical records and history for non-job-related matters and participating in clinical trials and epidemiological experiments as a condition of employment.

69. Plaintiff requests that this court take judicial notice of Section 201(h) of the Food, Drug and Cosmetic Act and its Final Guidance titled, "Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff", published in September of 2017, in which the Food & Drug Administration **defines** wearing a mask for mitigation purposes as a medical device and the application of a medical device or contrivance.

70. Plaintiff further requests judicial notice of the fact that the Food & Drug administration has never **approved** wearing such face masks, but only "authorized" them without any

---

[7] Discrimination based upon physical condition
[8] Prohibited by 29 CFR § 1630.13.
[9] Section 201(h) Food, Drug & Cosmetic Act

supporting medical or clinical data establishing any medical necessity or efficacy for wearing such contrivances.

71. Plaintiff requests that the court take judicial notice of the official mortality rates of the State of Illinois and the United States for the years from 2017, 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of no verifiable "pandemic".

72. Plaintiff has been damaged by defendant's violation of the ADA and ADA-AA and has suffered damages, which include past and future earnings, lost opportunities and benefits, and emotional distress.

73. The conduct of defendant and its agents and employees proximately, directly, and foreseeably, injured plaintiff, including but not limited to, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

74. The conduct of defendant was so willful and wanton and in such reckless disregard of the statutory rights of plaintiff so as to entitle her to an award of punitive damages against defendant, to deter it, and others, from such conduct in the future.

75. As a result of defendant's actions plaintiff has experienced discrimination, segregation, isolation.

76. Plaintiff is entitled to any and all relief permitted under the ADA and ADA-AA, 42 U.S.C. § 12117(a), including equitable relief.

77. **WHEREFORE**, Plaintiff respectfully requests entry of:

    a. judgment in plaintiff's favor and against defendant for violation of the anti-discrimination provisions of the ADA and ADA-AA;

    b. ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and

    c. ordering defendant to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

    d.    judgment in plaintiff's favor and against defendant for actual and compensatory damages, including lost earnings, front pay, and/or all actual monetary losses suffered as a result of defendant's conduct;

    e.    judgment in plaintiff's favor and against defendant for plaintiff's reasonable attorney fees, costs and litigation expenses;

    f.    judgment in plaintiff's favor and against defendant for punitive damages; and

    g.    an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

78.    Plaintiff demands a jury trial.

## COUNT II

## INTERFERENCE/RETALIATION UNDER THE ADA and ADA-AA

79.    The ADA and ADA-AA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing under the ADA, Title 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c).

80.    Plaintiff incorporates the above statements of fact and the allegations contained in the paragraphs 1 through 45 herein and plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

81.    In November of 2021, defendant began unceasingly to retaliate against plaintiff despite plaintiff's reasonable good faith belief that she was exercising protected opposition to discrimination and claiming rights protected under the ADA and ADA-AA.

82.    The plaintiff was threatened to be terminated because of her unvaccinated condition and has successfully stated a violation of the Act simply because she has been subjected to an action prohibited under the law because of perceived physical impairment.

83.    Defendant terminated plaintiff even after it was aware of a pending EEOC investigation and plaintiff's protected opposition status.

84. Defendant coerced plaintiff to submit to the accommodation measures, medical interventions and examinations and other health control measures, even though defendant was duly advised by plaintiff that she was not subject to any health control measures by any court order, and that the defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon plaintiff. [10]

85. Defendant threatened plaintiff with termination of employment, placed plaintiff on unpaid personal leave, then terminated her employment because of a perceived disability and as a result of classifying plaintiff as "unvaccinated".

86. Despite having knowledge of plaintiff claiming protected status under the ADA and ADA-AA, defendant terminated plaintiff's employment due to plaintiff's opposition to discriminatory policies and procedures.

87. Defendant also failed to give notice of plaintiff's right to refuse defendant's accommodations under the ADA and ADA-AA[11], and failed to advise plaintiff of her right to informed consent, which is considered interference with the exercise of plaintiff's rights under the ADA and ADA-AA.

88. As a result of defendant's intentional, willful and unlawful acts of retaliating against plaintiff by placing plaintiff on unpaid personal leave; terminating plaintiff's employment; and interfering with plaintiff's rights to refuse defendant's accommodations under the ADA and ADA-AA, plaintiff has suffered injury and damages.

89. The injury suffered by plaintiff is thereby concrete and particularized and it is actual and imminent. The injury alleged in the complaint, including the pleading and exhibits, clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical. The injury described therein is at least fairly traceable to the challenged action, conduct and policies of defendant.

90. The harm (injury) already suffered by plaintiff includes, but is not limited to, having to choose between waiving rights to: medical privacy, informed consent, refusal to take part in

---

10  See Illinois Admin. CodeTitle 77 § 690.1330

11  29 CFR Part 1630.9 (d) & (e)

clinical trials, and be free of discrimination and retaliation OR having plaintiff's employment terminated. Once violated, these rights cannot be recovered.

91. Defendant's policies and procedures demonstrate soundly and convincingly that it intends to inflict future harm against plaintiff based upon perceived disability; it fully intends to continue these policies and it fully intends to continue retaliating against plaintiff as alleged herein.

92. As a result of defendant's actions the plaintiff has experienced retaliation, coercion, interference, termination and disruption in plaintiff's career.

93. Defendant's efforts were to terminate plaintiff, rather than to provide equal access, per defendant's duty, and were not objectively or subjectively in good faith, therefore plaintiff is entitled to liquidated damages or other monetary damages, including punitive damages to the extent available.

94. **WHEREFORE**, Plaintiff respectfully requests entry of:

    a. ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

    b. take such affirmative steps as may be necessary to prevent the recurrence of any retaliation, coercion, interference and intimidation and to eliminate, to the extent practicable, the effects of such conduct.

    c. reinstatement, or, in the alternative, front pay in the event reinstatement is not practical;

    d. judgment in plaintiff's favor and against defendant for actual and compensatory damages, including lost earnings, front pay, and/or all actual monetary losses suffered as a result of defendant's conduct;

    e. judgment in plaintiff's favor and against defendant for plaintiff's reasonable court fees and litigation expenses;

    f. judgment in plaintiff's favor and against defendant for punitive damages; and

g. Assess a civil penalty against the defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and

h. an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

95. Plaintiff demands a jury trial.

DATED this 26 day of May 2022.

_____
Alexis Brode, Plaintiff