UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXIS BRODE, <br><br> Plaintiff, <br><br> v. <br><br> XERIS PHARMACEUTICALS, INC., <br><br> Defendant. | No. 22 CV 2903 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Alexis Brode filed this lawsuit against former employer, Xeris Pharmaceuticals, Inc., under the American Disabilities Act. Xeris instituted a mandatory COVID-19 vaccine policy in the fall of 2021, and Brode alleges that Xeris regarded her as disabled when it required her to be vaccinated and then discriminated and retaliated against her. Xeris moves to dismiss Brode's complaint for failure to state a claim, or in the alternative, moves for a more definite statement and to strike. While Brode's complaint contains allegations that meet some of the elements of her claims, she is missing other required elements, recites legal conclusions, and her allegations are not clear enough to suggest a claim for relief under the ADA. Brode's complaint is therefore dismissed without prejudice.

I.  **Legal Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,'

in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) *citing* Fed. R. Civ. P. 8(a)(2) *and Conley v. Gibson*, 355 U.S. 41 (1957). A plaintiff must allege facts that "raise a right to relief above the speculative level" and provide "further factual enhancement to take a claim … from the realm of 'possibility' to 'plausibility.'" *Hughes v. Northwestern University*, No. 18-2569, 2023 WL 2607921, at *8 (7th Cir. March 23, 2023); s*ee also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together.").

A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint and determines whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barwin v. Village of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (other citations omitted). "Any document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). Even under a liberal construction, however, a litigant must do more than recite the elements of a cause of action or make conclusory statements. *See Kaminski v. Elite Staffing, Inc.* 23 F.4th 774, 776–77 (7th Cir. 2022) ("All we can do is remind litigants, including those who find themselves having to

proceed pro se, that it is not enough for a complaint to allege labels and conclusions with providing facts.").

## II. Background

Brode worked as a sales representative at Strongbridge Biopharma from November 2017 until it merged with Xeris in 2021. [3] ¶ 9.[1] On October 6, 2021, Xeris had a company-wide call at which it announced that employees were required to get the COVID-19 vaccine. *Id*. Xeris's HR department sent several emails following up with reminders to send in proof of vaccination. [3] ¶¶ 11–12. On October 20, 2021, Xeris's Chief Commercial Officer and Brode had a phone conversation about the company's vaccine mandate. [3] ¶ 13. Brode expressed that she needed to do some research and that it was a personal choice whether or not to get vaccinated; the Chief Commercial Officer responded that he respected Brode's choice, but that Xeris might not be the place for her. [3] ¶ 13. Brode asked one person in Xeris's HR about "accommodations" and was directed to submit her request to other individuals in the group. [3] ¶ 14. Brode then wrote to those HR individuals and said, "I do have a religious exemption" and asked how to submit her request for an exemption. [3] at 9. Brode was told that she could submit a written request for a religious exemption. [3] at 10. Brode submitted an email explaining that she opposed the COVID-19 mRNA

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from Brode's complaint, [1] and attached affidavit, [3]. Written instruments attached to the complaint are part of the complaint. Fed. R. Civ. P. 10(c). Brode incorporates her affidavit into the complaint, [1] ¶ 48, so it can be considered when ruling on a motion to dismiss.

vaccines that were "produced or generated from aborted fetal cell lines." [3] at 11. She also stated that "coerced medical treatment" was contrary to her religious faith. *Id.*

On November 12, 2021, Xeris's HR department informed Brode that it had approved her request for a religious exemption "and based on the nature of your current position and the direct threat of harm you pose to other employees, customers and vendors," her accommodation would be to "be placed on a temporary, unpaid personal leave of absence beginning November 29, 2021 … until the earlier of either the Company ending its vaccination requirement or you becoming fully vaccinated." [3] at 13. Brode responded in writing that the accommodation appeared to be a termination of her employment, she did "not intend to voluntarily sever [her] relationship with Xeris" and she would be willing to work while wearing masks, observing client medical protocols, and being tested weekly. [3] at 14–15. Xeris responded through its Chief Legal Counsel, Beth Hecht, who said Xeris did not believe Brode had stated a legally cognizable claim for a religious accommodation. [3] at 16. The company granted an accommodation by permitting a temporary, unpaid leave of absence and denied Brode's request for the other accommodations. *Id.* Brode was placed on leave on November 29, 2021. [3] ¶ 20.

Nearly four months later, in March 2022, Brode submitted a "Notice of Discrimination and Harassment Based upon Disability" to Xeris via email. [3] ¶ 21. Brode also submitted a charge of discrimination and retaliation to the EEOC. [3] ¶ 22. In early April 2022, Brode had a phone conversation with Xeris about her EEOC charge and was sent a separation agreement. [3] ¶ 23. The cover letter stated that

Xeris had decide to terminate her employment because of the merger between Strongbridge and Xeris. [3] at 31. The Separation Agreement provided that Xeris would give Brode a severance package in exchange for a signed release and withdrawal of her EEOC charge. [3] at 32. Brode ultimately declined to sign the Separation Agreement and her termination was made effective April 22, 2022. [3] ¶¶ 30–31.

I.  Analysis

   A.  Discrimination

The first claim Brode brings is for discrimination under the ADA.[2] A plaintiff must plausibly allege that she "is disabled within the meaning of the Act, is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of [her] disability." *Tate v. SCR Medical Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). The ADA defines "disability" in three ways: (A) a physical or mental impairment that substantially limits one or more major life activities of [plaintiff]; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)–(C).[3] Brode alleges Xeris made a record of her

---

[2] Xeris points out that some of Brode's allegations echo the elements of an ADA failure-to-accommodate claim and questions whether she sought to bring such a claim. In her response brief, however, Brode states that she is not bringing a failure-to-accommodate claim. [12] at 6–7.

[3] An "impairment" is defined as:
   (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

5

having an impairment that substantially limited one or more major life activities and that Xeris regarded her as having such an impairment. [1] ¶ 16.

The EEOC-promulgated regulations provide further guidance on "record of disability": "An individual will be considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Brode has not alleged that she has a history of an impairment, instead she alleges that Xeris "misclassified" her "as having an impaired immune system and an impaired respiratory system." [1] ¶¶ 16, 23, 36, 52.

Under the "record of" definition of disability, the impairment "must have substantially limited one or more major life activities, as compared to most people in the general population." 29 C.F.R. § 1630.2(k)(2). Plaintiff alleges that Xeris "mis-classif[ied] her as substantially limited with impaired immune and respiratory systems affecting her ability to perform major life activities in the workplace, including working, communicating with others, performing manual tasks, talking, and breathing without the use of mitigation measures." [1] ¶ 23. This is a restatement of the "regarded-as" definition of disability—Brode's allegations are focused on her employer's alleged perception of her, not whether she had a record or history of

---

(2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities."
29 C.F.R. § 1630.2(h).

impairments that substantially limited her major life activities.[4] The interpretive guidance for the EEOC regulations states, "the intent of this provision, in part, is to ensure that people are not discriminated against because of a *history* of disability." 29 C.F.R. pt. 1630, App. § 1630.2(k) (2016) (emphasis added). Brode does not allege that she has a history of a disability that resulted in school, medical, or educational records of an impairment, much less an impairment that substantially limited one or more of her major life activities. She has not alleged a record of disability, and any claim under that definition of disability is dismissed.

Brode also alleges that Xeris regarded her as being disabled.[5] A person is "regarded as" disabled if she "establishes that [she] has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). To be successful on a "regarded as" claim, a plaintiff must allege that the defendant employer believed the plaintiff had an impairment at the time of the adverse action. *See Shell v. Burlington Northern Santa Fe Railway*

---

[4] To the extent that Brode relies on the "misclassification" language, the EEOC Interpretive Guidance suggests it refers to a misclassification that happened in the past and resulted in a record of a disability, giving the example of "an employee who in the past was misdiagnosed with bipolar disorder and hospitalized as the result of a temporary reaction to medication she was taking has a record of a substantially limiting impairment, even though she did not actually have bipolar disorder." 29 C.F.R. pt. 1630, App. § 1630.2(k) (2016). That's not what Brode seems to be referring to when she uses "misclassification."

[5] Xeris argues that Brode cannot allege disability under both the "record of" and "regarded as" prongs because they are mutually exclusive—one relies on a plausible allegation of a history of an impairment and the other requires plausible allegations that the employer incorrectly regarded Brode as being impaired. [9] at 14; [15] at 2. Plaintiffs are allowed to plead alternative theories in their complaint. Fed. R. Civ. P. 8(d)(2). As discussed above, Brode's "record of" allegations are deficient. Any inconsistency with the "regarded as" test is immaterial now.

*Company*, 941 F.3d 331, 335–37 (7th Cir. 2019) (The regarded-as definition of "disability" under the ADA cannot be based on an employer's concern about an employee developing an impairment in the future). Brode alleges that she was "perceived as disabled with a contagious disease," [1] ¶¶ 16, 34, 52, but does not indicate whether Xeris believed she had a contagious disease when it placed her on an unpaid personal leave or terminated her employment. Furthermore, Brode's allegations that Xeris perceived her as disabled are conclusory and rest on her contention that *she* notified Xeris that it considered her as disabled. *See* [1] ¶¶ 23, 34. But the regarded-as prong of disability focuses on what the *employer* believes. *See Silk v. Board of Trustees, Moraine Valley Community College, Dist. No. 524*, 795 F.3d 698, 706 (7th Cir. 2015) ("In satisfying the 'regarded as' prong, Silk must show that the College perceived him as having an impairment."). To plausibly allege that she was perceived as having a disability, Brode must allege facts about Xeris's perception of her, not what she told them (or even what she told them that they believed).

Brode also argues that she is "proceeding under the two prongs of the ADA in which the burden of proof is upon the defendant not the plaintiff." [12] at 5. That's not how this works. Any definition of "disability" under the ADA requires that the plaintiff first allege facts in support of the requirements of the definition. *Koty v. DuPage County, Illinois*, 900 F.3d 515, 519 (7th Cir. 2018). It is possible that Brode is referring to the idea of burden-shifting in discrimination cases. Once the plaintiff has made a *prima facie* case for discrimination or retaliation, then the burden shifts to the defendant to provide a non-discriminatory or non-retaliatory reason for its

8

behavior. *See Brooks v. Avancez*, 39 F.4th 424, 433–34 (7th Cir. 2022). If the defendant is successful on that burden, then the plaintiff must show that the defendant's reason is "pretextual," or false. *Id.* at 434. But that burden shifting takes place at the stage in a case where evidence of the alleged facts matters—at summary judgment or trial. *See Graham v. Board of Education*, 8 F.4th 625, 627 (7th Cir. 2021). At the pleading stage, Brode must make plausible allegations that she is disabled in a manner recognized by the ADA. She has not done so.

Brode alleges that she was otherwise "qualified" to her job because she "met the legitimate skills, experience, education, or other requirements of the employment position that plaintiff held, and who can/could perform the 'essential functions' of the position plaintiff held with or without reasonable accommodation." [1] ¶ 17. This is simply reciting the statutory definition of a "qualified individual," the second element of an ADA discrimination claim. Brode must make plausible allegations of facts to support those conclusions. *Kaminski*, 23 F.4th at 776.

The third requirement for an ADA discrimination claim is that an employer took an adverse employment action because of an employee's disability. *Shell*, 941 F.3d at 335. Adverse employment actions must be "'materially' adverse to be actionable … [and may] be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001) (internal citations omitted).

Brode has made plausible allegations of adverse employment actions—she alleges that she was placed on indefinite unpaid personal leave and that her employment was ultimately terminated. *See* [3] ¶¶ 20, 23–32. But none of those allegations state the reason for the adverse action, which is required to adequately plead an ADA discrimination claim. *Shell*, 941 F.3d at 335. Elsewhere, Brode says, "Defendant's policies and procedures segregated the plaintiff based on physical condition" and "Defendant's policies and procedures refused [to] allow plaintiff to perform her employment duties without using mitigation measures. [1] ¶¶ 42, 44. But it is not clear what Brode is referring to by "policies and procedures" or "physical condition" or "mitigation measures." These are vague terms that give neither Xeris nor the court the information to understand what Brode is saying happened. Brode must allege an adverse action and that Xeris took that adverse action *because of* her disability. A simple statement in the form of "the employer did [describe adverse action] to me because of [describe disability]" might be a better way of phrasing these allegations. Simplicity and clarity are prized features of a complaint (whether *pro se* or drafted by lawyers).

Brode's claim for discrimination based on her disability is dismissed without prejudice.

## B. Retaliation

Brode can bring a retaliation claim if she plausibly alleges: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse action, and (3) a causal connection between the two. *Koty*, 900 F.3d at 519.

10

"Statutorily protected activity" refers to "either (1) filing a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023). Brode alleged that she sent an email to Xeris's HR saying she was claiming rights under the ADA and filed an EEOC charge in March 2022. [3] ¶¶ 21–22. Both of these are statutorily protected activities. *See Miller v. Chicago Transit Authority*, 20 F.4th 1148, 1155 (7th Cir. 2021) (complaint of discrimination is protected activity if it indicates discrimination occurred because of protected characteristic) *and Koty*, 900 F.3d at 520 (filing EEOC charge is statutorily protected activity).[6]

Sending an informal complaint of the kind that Brode sent to Xeris in November 2021 can be considered a statutorily protected activity, but the message must provide the employer with sufficient notice of the particular rights that the employee is invoking. *McHale v. McDonough*, 41 F.4th 866, 871–72 (7th Cir. 2022) (in order to be statutorily protected activity the complaint, whether formal or informal, must indicate that the discrimination occurred because of the protected characteristic); *see also Casna v. City of Loves Park*, 574 F.3d 420, 426–27 (7th Cir. 2009) (employer asking employee "How can you work if you cannot hear?" and employee responding, "Aren't you being discriminatory?" is sufficient to give notice to

---

[6] In her response brief, Brode seems to conflate "statutorily protected activity" with "major life activities" as defined by the ADA. *See* [12] at 8 ("The 'statutorily protected activity' was sufficiently alleged in the complaint where the plaintiff alleged that she was engaged in one or more life activities."). These are two separate concepts.

employer that employee was claiming rights under the ADA). But Brode's internal communications in the fall of 2021 do not claim rights under the ADA.

Brode only ever discussed her reluctance to become vaccinated in terms of a personal or moral choice. In the phone call with the Chief Commercial Officer where she said it was a personal choice and her email to Xeris's HR department asking about a religious exemption, Brode raised religious and moral concerns about the vaccine mandate. [3] ¶ 13; [3] at 9. Brode's request for an exemption stated that she had a religious objection to the vaccines due to the use of cell lines derived from an aborted fetus and that she believed the vaccine requirement was "coerced medical treatment" that violated her religious faith and the Nuremburg Code of 1947. [3] at 11. Finally, the email Brode sent to Xeris's Chief Legal Counsel in response to being placed on unpaid leave stated, "[Y]ou have denied my right to make personal decision about my health and what I permit or chose to be injected into my body." [3] at 14–15. All of the language focused on either religious or moral objections to the vaccine and was not sufficient to put Xeris on notice that Brode was seeking to exercise rights under the ADA or that she was seeking an accommodation as a person with a disability.

Brode argues that she did not know about her rights under the ADA in the fall of 2021. [12] at 9. But whether she knew about the ADA or not, she needed to say something that put Xeris on notice that she was asserting a right protected by that statute (or opposing a practice forbidden by the ADA). The allegations and documents submitted in Brode's complaint are insufficient to show that Brode engaged in ADA-protected activity in the fall of 2021.

12

An employment action is adverse for purposes of a retaliation claim if "a reasonable employee would be dissuaded from engaging in the protected activity." Koty, 900 F.3d at 520. Brode's complaint has allegations of employer behavior recognized as "adverse employment action"—she was placed on unpaid personal leave and terminated. [1] ¶¶ 21, 85–86, 88; [3] ¶¶ 20, 23–32.

The third element of a claim for ADA retaliation, requires a plaintiff to plausibly allege that the protected activity was the but-for cause of the adverse action. *See Monroe v. Indiana Department of Transportation*, 871 F.3d 495, 504 (7th Cir. 2017) *and Silk*, 795 F.3d at 705–06 (open question whether 2008 amendments to the ADA open the door for mixed-motives causation for ADA claims but continuing to use "but-for" standard until a case properly raises the issue). There are three allegations in Brode's retaliation count that address causation, but none put the required pieces together. Brode alleges that she was "threatened to be terminated because of her unvaccinated condition," [1] ¶ 82, but being unvaccinated is not statutorily protected activity. Brode then alleges that that she was threatened with termination, placed on unpaid personal leave, and terminated "because of a perceived disability and as a result of classifying plaintiff as 'unvaccinated.'" [1] ¶ 85. Being perceived to have a disability is not statutorily protected activity; this statement is better suited to what is required to allege ADA discrimination. Finally, Brode alleges that "despite having knowledge of plaintiff claiming protected status under the ADA and ADA-AA, defendant terminated plaintiff's employment due to plaintiff's opposition to

13

discriminatory policies and procedures." [1] ¶ 86.[7] While very close to meeting the pleading requirements, the phrase "opposition to discriminatory policies and procedures" is too vague to provide adequate notice to Xeris. If Brode is referring to to her opposition to Xeris's requirement to be vaccinated, she should just say so; defendant and the court will then be able to analyze whether Brode has alleged statutorily protected activity.

If Brode chooses to try again with an amended complaint, she needs to make plausible factual allegations that adverse employment actions were taken *because of* her statutorily protected activity and spell out the adverse actions and the protected activity. Brode's claim for ADA retaliation is dismissed without prejudice.

### C. Interference

Interference is a distinct claim under the ADA; it is not the same thing as a retaliation claim under subsection (a) of Section 12203. *See Frakes v. Peoria School District No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017) (addressing an ADA interference claim as a separate claim and looking to the FHA's anti-interference framework for guidance); 42 U.S.C. § 12203(b). An ADA interference claim requires a plaintiff to allege that: "(1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated

---

[7] Brode also alleges that "Defendant terminated plaintiff even after it was aware of a pending EEOC investigation and plaintiff's protected opposition status," [1] ¶ 83. This allegation references both statutorily protected activity (EEOC charge) and adverse action (termination) but alleges only knowledge, not allege causation.

by an intent to discriminate." *Id.*. Brode labels the second count of her complaint "Interference/Retaliation Claim," [1] at 12, and uses the words "threatened" and "coerced." [1] ¶¶ 82, 84, 85. Brode indicates in her response brief that she intended to bring an interference claim. [12] at 8. In order to comply with Rule 8's requirements to give adequate notice to defendant (and the court) of her claims, Brode needs to allege the facts in support of her interference claim: What was the protected activity? What was the coercion, threat, or interference? What motivated the alleged coercion, threat, or intimidation? Putting aside legal conclusions, the complaint does not adequately tie her allegations to an interference claim.

## III. Conclusion

Brode does herself no favors by including lots of allegations in her complaint—it makes it harder to understand her claims. Brode is reminded that she is not required to prove her claims now, nor does she need to use legal jargon to survive a motion to dismiss.[8] If Brode chooses to re-plead her claims, she should use the Northern District of Illinois's form complaint for employment discrimination.[9] All online forms for litigants proceeding *pro se* are available on the Northern District's

---

[8] For example, Brode alleges that she was not provided "equal access," that Xeris needed to provide "individualized assessments," that Xeris limited its accommodations, etc. [1] ¶¶ 38, 40, 64. Many of these terms are used in the ADA and EEOC regulations to describe types of prohibited discrimination. *See* 42 U.S.C. § 12112(b)(1)–(7); 29 C.F.R. § 1630.2(r); 29 C.F.R § 1630.9(d). The ADA regulations provide helpful and important guidance on application of the law, but at this stage of the case, Brode should focus on making clear, plausible allegations of the required elements of the claims.

[9] Defendant's motion to strike is denied. Motions to strike are generally disfavored unless they expedite the litigation. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc*, 883 F.2d 1286, 1294 (7th Cir. 1989). Here Brode's entire complaint is dismissed with leave to re-plead, so the motion to strike will not advance the litigation.

website at ilnd.uscourts.gov/OnlineForms.aspx and by clicking on the "Pro Se Litigants" tab in the middle of the page.

Defendant's motion to dismiss, [8], is granted. The complaint is dismissed without prejudice. Plaintiff has leave to file an amended complaint in accordance with this opinion by April 27, 2023. If no amended complaint is filed, the dismissal will convert to a dismissal with prejudice and the clerk will enter final judgment in favor of defendant.

ENTER:

Date:   March 30, 2023

_____
Manish S. Shah
U.S. District Judge